**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

**LOWYLESS GLASPER, SR.**                              **CIVIL ACTION**

**VERSUS**                                              **NO: 06-5897-CJB-SS**

**MATTHEW MORGAN, et al**

DEFENDANT'S MOTION FOR SANCTIONS (Rec. doc. 42)

**GRANTED**

Before the undersigned is the motion of the defendants, Matthew Morgan ("Morgan") and Anexus Insurance Services ("Anexus"), for sanctions against the plaintiff, Lowyless Glasper, Sr. ("Glasper"). The motion is granted.

**Procedural Background**

On July 30, 2006, Glasper filed a petition in state court alleging that: (1) he owned the Roc A Fella nightclub at 3635 Pine Street in New Orleans; (2) when he purchased the property he contacted the defendant, Matthew Morgan ("Morgan"), an insurance agent with Anexus Insurance Services ("Anexus") and requested insurance on the property; (3) applications were submitted and payments were made; (4) Glasper did not receive the policies; (5) there were regulatory proceedings against Morgan in Texas and Oregon; (6) on August 29, 2005, Hurricane Katrina struck; (7) the Pine Street property was flooded; and (7) there was no flood insurance on the property.[1]  Rec. doc. 1 (Attachment).  There is no mention in the petition of a fire at the Pine Street property occurring on

---

[1] Anexus and Arch Insurance Group ("Arch"), the errors and omission insurer for Morgan, are also named as defendants.

or within a few days of August 29, 2005.

The petition was removed to federal court. The notice of removal was sent to A. Patrice Dangerfield, Law Office of Patrice Dangerfield & Associates, 1628 Carondelet Street, Suite C, New Orleans, LA 70130. Rec. doc. 1 (Attachment). On December 20, 2006, Chiquita P. Tate, 263 Third Street, Suite 307, Baton Rouge, LA 70801, moved to enroll as "additional counsel of record" for Glasper. Rec. doc. 9. The Clerk notified her of a deficiency which was not corrected. The motion was terminated. On January 24, 2007, Tate was granted leave to appear as counsel for Glasper. Rec. doc. 17.

In January, 2007, the defendants filed a motion to dismiss and a motion for judgment on the pleadings. Rec. docs. 11 and 12. Glasper submitted an opposition which was electronically filed and signed by Dangerfield and Tate, rec. doc. 13, and requested leave to amend his pleading. Rec. doc. 15. On March 28, 2007, the Court denied the defendant's motions and granted Glasper leave to amend. Rec. doc. 27. Glasper added allegations to support a claim of fraud based upon representations made regarding the issuance of the insurance. Rec. doc. 28.

On July 19, 2007, there was a telephone scheduling conference in which Dangerfield participated but Tate did not. The discovery deadline was set for February 20, 2008, the pretrial conference for March 20, 2008, and trial on April 14, 2008. Rec. doc. 37. The Clerk's record demonstrates that a copy of the scheduling order was sent by e-mail to Tate at tatelaw2@bellsouth.net and a copy was sent by mail to Dangerfield at 1628 Carondelet Street. The Clerk does not have any record that the scheduling order sent to Tate or Dangerfield was returned as undelivered.

On November 8, 2007, Morgan and Anexus filed a motion to compel discovery from

2

Glasper.[2]  Rec. doc. 38.  Glasper did not file any opposition.  On December 3, 2007, Glasper was ordered to respond to the discovery and the defendants' request for sanctions was denied.  Rec. doc. 41.  The December 3, 2007 discovery order was sent by the Clerk to Dangerfield via regular mail and was not returned as undelivered.  The order was sent to Tate at her registered e-mail address and there is no notation that it was not delivered.[3]

Glasper did not comply with the December 3, 2007 discovery order and therefore the defendants filed the motion for sanctions on December 20, 2007.  Rec. doc. 42.  On December 27, 2007, an order was issued setting the motion for sanctions for hearing (no oral argument) on January 16, 2008, on briefs.  Rec. doc. 43.  The order was sent to Tate and Dangerfield in the same manner as the prior orders and not returned as undelivered.

Although Glasper's opposition to the motion for sanctions was due on January 8, 2008, he did not file any opposition.  On January 16, 2008, an order was issued which: (1) reset the motion for sanctions for January 23, 2008; (2) required Glasper to demonstrate by January 22, 2008 why

---

[2] The defendants submitted a certificate, pursuant to L.R. 37.1, which states that:

[C]ounsel had a discovery conference on August 21, 2007, after the depositions of Ms. Dangerfield and Mr. Glasper, wherein the plaintiff agreed to produce discovery responses by September 6, 2007. Responses have still not been received to date, despite additional requests by fax, e-mail, and telephone.

Rec. doc. 38 (Attachment).  The defendants' motion to compel was served by e-mail.  Rec. doc. 38 at. p. 4.

[3] When regular mail is returned as undelivered, a notation is made in the record. When an order is sent electronically by e-mail to an attorney and the Clerk receives notice that e-mail was not delivered (a "bounce-back"), the Clerk calls the attorney and notifies the attorney that an order was sent but it was not received by the attorney. This call may be made after the first bounce-back or it may be made after a second or third attempt to send the order by e-mail. In any event, a telephone call is made.

The Clerk's records indicate that after Tate was enrolled as additional counsel on January 24, 2007, all orders were sent to her by e-mail.  Tate denies receiving any of the orders.  The Clerk does not have a record of making calls to Tate about a bounce-back until January 22, 2008; one year after she enrolled as counsel.  One inference is that prior to January 22, 2008, Tate was receiving the orders.  Because of the volume of electronic mail and bounce-backs, records of the follow-up calls are not maintained with the reliability as for regular mail which is returned as undelivered.  Tate denies receiving any orders until January 23, 2008.  She changed her e-mail address with the Clerk on January 22, 2008.

3

his case should not be dismissed with prejudice for failure to comply with the December 3, 2007 discovery order and for failure to prosecute; and (3) stated that if Glasper did not comply a report and recommendation would be issued that his case be dismissed for failure to prosecute. Rec. doc. 44. The January 16, 2008, order was sent to Dangerfield in the same manner as the prior orders and again, it was not returned as undelivered. Glasper did not file anything by January 22, 2008.

On or about January 29, 2008, Tate called the undersigned's office and reported: (1) Dangerfield had a conflict and either had withdrawn or would withdraw as counsel for Glasper; (2) Dangerfield received the discovery orders but did not report their receipt to Tate; (3) Tate's e-mail address did not work and would be changed; (4) Glasper provided everything he had to the defendants in response to their discovery; and (5) a response to the show cause order would be filed.

On January 30, 2008, Tate, on behalf of Glasper, filed a memorandum in opposition to defendants' motion for sanctions and a witness list. Rec. docs. 48 and 49. The memorandum reported e-mail problems and indicated Tate changed her e-mail account from BellSouth to Cox Communications. Rec. doc. 48 at p. 2. Dangerfield was listed as a witness.[4]

On January 31, 2008, an order was issued to permit the defendants to respond to Glasper's contention that all documents sought by defendants were produced to them. Rec. doc. 50. The order was sent by e-mail to Tate's new e-mail address and it was not returned. The order was sent by mail to Dangerfield and it was not returned. On February 12, 2008, the defendants filed their reply in which they sharply disagree with the account provided by Tate on behalf of Glasper. Rec. doc. 54.

Currently, Dangerfield has not withdrawn as counsel of record for Glasper and therefore she remains the lead counsel for Glasper.

---

[4] The witness list was not timely under the Court's scheduling order which required that the witness and exhibit lists be filed by January 21, 2008. Rec. doc. 37.

**The Closing File and the Fire Loss Claim**

The defendants urge that Glasper has not produced the entirety of Dangerfield's closing file for Glasper's purchase of the Pine Street property or the entirety of the file for a claim that Glasper made for fire damage to the Pine Street property which occurred in the immediate aftermath of Hurricane Katrina.

Glasper testified in his deposition that he purchased the Pine Street property for $470,000.00 in December 2004. Rec. doc. 38 (Exhibit 4 at pp. 12 and 23). Dangerfield testified in her deposition that she represented Glasper in the purchaser of the property. Rec. doc. 38 (Exhibit 3 at pp. 13-14). Before he purchased the property, Glasper purchased the business which was a lounge/nightclub. Id. Dangerfield did the legal work for the purchase of the business. Id. at p. 13. When Glasper purchased the business, he made known his intention to buy the real estate. Id. at p. 18. Dangerfield did the legal work to close the cash sale of the real estate, including running the abstract, obtaining information from the seller, checking the title, and obtaining insurance. Id. at p. 18.

The defendants contend that, prior to Hurricane Katrina, all insurance for the Pine Street property was bound except for flood insurance. Rec. doc. 38 at pp. 2-3. There is a dispute as to whether Dangerfield received communications from Morgan concerning what was required to bind coverage for the flood insurance. Rec. doc. 38 (Exhibit 3 at pp. 30 and 46). The defendants contend that Dangerfield did not respond to Morgan's requests for a signed application and other information required to secure the flood insurance.

After Hurricane Katrina, Dangerfield represented Glasper on a claim against the hazard insurer for fire damage to the property. It was resolved with a payment of $490,000.00. Id. at pp. 54 and 56. On August 1, 2006, a check was issued for $492,092.00, which was endorsed by

5

Glasper. Rec. doc. 38 (Exhibit 13).

The defendants served a request for Dangerfield's closing file on the Pine Street property. Rec. doc. 38 (Exhibit 6). Glasper objected on the ground of work product and attorney-client privilege, but did not provide a privilege log. Rec. doc. 38 (Exhibit 9).

Defendants argue they are entitled to Dangerfield's closing file and information regarding the fire loss claim. The defendants' position is correct. The closing file relates to events which occurred prior to Hurricane Katrina. Morgan has documents, including records of transmittals of a fax, which he contends demonstrate that communications were sent to Dangerfield after the closing. He contends he sought documentation from Dangerfield which was required by the flood insurer to bind coverage.

The defendants are also entitled to Dangerfield's file on the fire loss claim. If Glasper was fully compensated for all damage to the property by the hazard insurance, he is not entitled to duplicate payments from the defendants on the basis that he should have been able to recover on a flood policy.

Glasper was <u>ordered</u> to produce all documents sought by the defendants by December 17, 2008. Rec. doc. 41. He has not complied with that order. In the January 30, 2008 memorandum Tate, on behalf of Glasper, states:

> Plaintiff was not intentionally disregarding the discovery request or the order of this Honorable Court, and had attempted to provide defendants with the documents believed to satisfy his discovery request. The entire time, counsel for plaintiff was communicating with defendant's counsel, Michael Juneau, that additional documents for the fire claim was (sic) being sought. This matter pre-dated Hurricane Katrina and Attorney Dangerfield had to locate the files in storage – most of which was (sic) destroyed or damaged by flood waters to her own building as a result of the storm. The only remaining documents in plaintiffs possession as a result of defendants' discovery request have now been provided to the defendant.

Rec. doc 48 at pp. 1-2. It was impossible for documentation on the fire loss claim to have been destroyed by Hurricane Katrina since it was generated <u>after</u> Hurricane Katrina. Dangerfield testified in her deposition that she still has the closing file on the Pine Street property. Rec. doc. 54 at p. 4-5. Tate's statement on behalf of Glasper does not square with the obvious facts concerning the fire loss claim documentation or Dangerfield's testimony concerning the closing file.

**January 30, 2008 Production**

The defendants report that Tate, on behalf of Glasper, produced documents on January 30, 2008. These are the only documents produced by Glasper since the December 3, 2007, discovery order.

A.  The Closing File.

Tate, on behalf of Glasper, submitted an amended discovery response and represented that she was producing the remaining documents from the closing file and that defendants had a copy of the HUD document.[5] Rec. doc. 54(Exhibit A). Only eight pages were produced: (1) a March 3, 2005 fax from Dangerfield to Morgan requesting paid receipts for flood insurance; (2) a copy of a check for $750.00; (3) a one page form dated December 28, 2004 concerning a loan; and (3) five pages of an agreement to purchase or sell. Id. Although Dangerfield testified that her work to close the sale included running the abstract, obtaining information from the seller, checking the title, and obtaining insurance, documents regarding these activities were not produced on January 30, 2008. Rec. doc. 38 (Exhibit 3 at p. 18). The January 30, 2008 production of the closing file is incomplete.

B.  The Fire Loss Claim.

---

[5] On January 30, 2008, Tate, on behalf of Glasper, did not object that documents in the closing file were protected from disclosure and did not produce a privilege log. It is not clear whether any documents were pulled from the file based on the attorney-client privilege or the work product doctrine.

Tate, on behalf of Glasper, produced an amended response regarding the fire loss claim. A cursory review of the first page of an adjuster summary prepared for Glasper indicates that there is a factual issue concerning damages claimed on the fire loss policy and claimed damages associated with the flood claim. For example, the first item is for the removal and replacement of wall to wall carpeting. Rec. doc. 54 (Exhibit C at p. 4). The defendants argue that there are documents which are missing from the fire loss claim file. They contend that they do not have any documents from the insurer itemizing what the settlement of $492,092.88 covered. They also urge that Glasper did not produce all documents from the fire loss claim because they were able to find some documents from third parties. See Rec. doc. 54 (Exhibits D-I).[6] The first two documents are letters from Dangerfield to the adjusters regarding the fire loss claim. See Morgan & Anexus 00293-98. Glasper's production of the fire loss claim is incomplete.

## Applicable Law

The defendants request that the action be dismissed. The authority of a federal trial court to dismiss a plaintiff's action because of his failure to prosecute is clear. See Link v. Wabash R. Co., 370 U.S. 626, 629-30, 82 S. Ct. 1386, 1388, (1962). Fed. R. Civ. P. 41(b) of the Federal Rules of Civil Procedure provides that a court may in its discretion dismiss any action based on the failure of the plaintiff to prosecute or comply with any order of the court. Larson v. Scott, 157 F.3d 1030, 1032 (5th Cir. 1998); Hulsey v. State of Tex., 929 F.2d 168, 171 (5th Cir. 1991); McCullough v. Lynaugh, 835 F.2d 1126, 1127 (5th Cir. 1988); Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 749 (5th Cir. 1987).

Because of the operation of the statute of limitations, a dismissal may operate as a dismissal

---

[6] These documents are itemized on page 11 of the defendants' reply memorandum. Rec. doc. 54. The itemization also refers to the Bates-stamped numbers on the documents.

with prejudice. A dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumaciousness and a district court should employ lesser sanctions before dismissing the action. Long v. Simmons, 77 F.3d 878, 880 (5th Cir. 1996). In applying the sanction of dismissal, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, is responsible for the delay or failure to comply with the court's order. Markwell v. County of Bexar, 878 F.2d 899, 902 (5th Cir. 1989); Price v. McGlathery, 792 F.2d 472, 474-75 (5th Cir. 1986). In Ford v. Sharp, 758 F.2d 1018 (5th Cir. 1985), the Fifth Circuit described aggravating factors to be examined in considering an involuntary dismissal with prejudice including the extent to which the plaintiff, as distinguished from counsel, is personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct

## **Analysis**

Glasper has failed to comply with the court's orders and the requirements of the Federal Rules of Civil Procedure on multiple occasions. He failed to: (1) file any opposition to defendants' motion to compel (Rec. doc. 38); (2) comply with the discovery order of December 3, 2007 (Rec. doc. 41); (3) file an opposition to defendant's motion for sanctions (Rec. doc. 42); and (4) timely comply with the order of January 16, 2008, requiring him to show cause why his case should not be dismissed (Rec. doc. 44). Most importantly, Glasper has not produced the entirety of Dangerfield's closing file and the fire loss claim file. These files contain documents which are critical to a resolution of the issues of liability and damages. One could infer that the failure to produce these documents is intentional. At a minimum, the conduct of Glasper's counsel demonstrates a complete disregard of their responsibility to prosecute this action on behalf of Glasper and to cooperate in

discovery.

The documents which have been produced either by Glasper or by defendants' discovery from third parties demonstrate that Dangerfield diligently prosecuted Glasper's fire loss claim. She is the lead counsel for Glasper in this case. Every order was sent to her by the Clerk to her address on Carondelet Street yet she ignored the discovery orders in this case. She has not pursued this claim with the same diligence with which she pursued the fire loss claim.

This decision to impose sanctions on Glasper is based on his failure to produce the entirety of the closing file and the fire loss claim file. Dangerfield, the lead counsel for Glasper, received all of the discovery orders by mail at her office. By January 30, 2008, when Tate filed a memorandum in opposition to the defendants' motion for sanctions, Tate was aware of the December 3, 2007 discovery order and the January 16, 2008 order requiring Glasper to show cause why his case should not be dismissed for failure to comply with the December 3, 2007 order, yet she also failed to produce the documents. She also has not pursued this claim with diligence.

## Conclusion

Because of the statute of limitations, Glasper's claim could be extinguished if this matter is dismissed, whether with or without prejudice. Although there is an inference that the failure to comply with the court's orders is purposeful, lesser sanctions than dismissal have not been imposed. See Long v. Simmons, 77 F.3d at 880. Therefore, it will not be recommended that the case be dismissed. Instead, Glasper will be required to: (a) pay sanctions to the defendants for pursuit of this discovery; (b) produce the documents; and (c) appear for his deposition and have Dangerfield's deposition taken at his expense. Glasper, Dangerfield and Tate are notified that **any failure to comply with this order or further discovery orders will result in a recommendation that the**

**case be dismissed with prejudice.**

IT IS ORDERED as follows:

1. Defendants' motion for sanctions (Rec. doc. 42) is GRANTED and defendants shall be awarded their fees and costs for the preparation of their motion to compel (Rec. doc. 38), their motion for sanctions (Rec. doc. 42), and their reply (Rec. doc. 54). **Within seven (7) working days of the entry of this order** the defendants shall submit an *ex parte* motion to tax fees and costs with documentation supporting the fees and costs to be awarded. Glasper shall be required to pay the sum fixed by the undersigned **in full** prior to the pretrial conference.

2. By **Monday, March 3, 2008,** Glasper shall deliver to the office of counsel for defendants **the entirety** of Dangerfield's closing file and all documents sought by defendants on the fire loss claim. Glasper, Dangerfield and Tate are cautioned that Fed. R. Civ. P. 34(a), requires production of documents which are in Glasper's possession, custody or control, including any documents that may be in the possession or control of **any** of them.

3. By **Monday, March 3, 2008,** Glasper, Dangerfield and Tate and shall file affidavits stating that, after a diligent search of their files, they have fully complied with this order. **Glasper's affidavit shall include a statement that his counsel furnished him with a copy of this order, he has read the order, and he fully understands the order.**

4. By **Monday, March 3, 2008,** Glasper shall deliver to the office of counsel for defendants a privilege log for any documents withheld from either the closing file or the fire loss claim file on the grounds of the attorney-client privilege or the work product doctrine. By that same deadline, Glasper shall deliver to the undersigned's chambers: (a) a copy of the

11

privilege log; and (b) all documents withheld from production.

5. After compliance with parts 2 through 4 and by **Wednesday, March 12, 2008,** Glasper and Dangerfield shall make themselves available for further depositions in the Eastern District of Louisiana at a time and place that is convenient for counsel for the defendants. All costs of the court reporter shall be paid by Glasper at the time of the depositions.

6. If Glasper, Dangerfield and Tate fail to comply with this order, the defendants shall file a motion for imposition of further sanctions, including dismissal, with a request for expedited consideration.

7. The delay for any appeal of this order is shortened to **five (5) working days** from its entry.

New Orleans, Louisiana, this 20th day of February, 2008.

	**SALLY SHUSHAN**
	**United States Magistrate Judge**

**Clerk to send copy of order via regular mail and via facsimile to:**

1) Chiquita P. Tate - *Via Telefax (225) 383-4521*
263 3rd Street, Suite 307
Baton Rouge, Louisiana 70801-1393

2) Akello P. Dangerfield
A. Patrice Dangerfield & Associates
1628 Carondelet Street, Suite C
New Orleans, LA 70130