UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOWYLESS GLASPER, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-5897-CJB-SS** |
| **MATTHEW MORGAN, et al** | |

### REPORT AND RECOMMENDATION

Before the undersigned is the motion of the defendants, Matthew Morgan ("Morgan") and Anexus Insurance Services ("Anexus"), for the imposition of further sanctions, including the dismissal of the complaint of Lowyless Glasper, Sr. ("Glasper") with prejudice and for other relief. For the reasons described below, it is recommended that the defendants' motion be granted and that Glasper's complaint be dismissed with prejudice.

### Background

On February 21, 2008, the defendants' prior motion for sanctions was granted. Rec. doc. 57. The order contains a detailed description of the procedural background, issues concerning production of documents, and Glasper's production on January 30, 2008. The order states:

> Because of the statute of limitations, Glasper's claim could be extinguished if this matter is dismissed, whether with or without prejudice. Although there is an inference that the failure to comply with the court's orders is purposeful, lesser sanctions than dismissal have not been imposed. See Long v. Simmons, 77 F.3d at 880. Therefore, it will not be recommended that the case be dismissed. Instead, Glasper will be required to: (a) pay sanctions to the defendants for pursuit of this discovery; (b) produce the documents; and (c) appear for his deposition and have Dangerfield's deposition taken at his expense. Glasper, Dangerfield and Tate are notified that **any failure to comply with this order or further discovery orders will result in a recommendation that the case be dismissed with prejudice.**

Rec. doc. 57 at 10-11. The parties were ordered to proceed as follows:

1. Defendants' motion for sanctions (Rec. doc. 42) was granted and defendants were awarded their fees and costs for the preparation of their motion to compel (Rec. doc. 38), their motion for sanctions (Rec. doc. 42), and their reply (Rec. doc. 54). The defendants' motion for taxation of costs was granted. Rec. docs. 58 and 60.

2. By Monday, March 3, 2008**,** Glasper was to deliver to the defendants the entirety of Dangerfield's closing file and all documents sought by defendants on the fire loss claim.

3. By Monday, March 3, 2008**,** Glasper, Dangerfield and Tate were to file affidavits stating that, after a diligent search of their files, they fully complied with this order. Glasper's affidavit was to include a statement that his counsel furnished him with a copy of that order, that he had read the order, and he fully understood the order.

4. By Monday, March 3, 2008, Glasper was to deliver to the undersigned a privilege log and all documents withheld from production.

5. After compliance with parts 2 through 4 and by Wednesday, March 12, 2008**,** Glasper and Dangerfield were to make themselves available for further depositions. All costs of the court reporter were to be paid by Glasper.

6. If Glasper, Dangerfield and Tate failed to comply with the order, the defendants were to file a motion for imposition of further sanctions, including dismissal.

Rec. doc. 57 (Emphasis in original). Glasper did not appeal the ruling.

On March 3, 2008, Tate, Dangerfield and Glasper filed affidavits. Dangerfield states that she "fully responded to defendant's discovery requests and . . . fully complied with the order" and "[e]very document that was otherwise deemed work product and/or attorney privilege has been furnished to the defendant." Rec. doc. 62. Tate's affidavit makes the same statements. Rec. doc. 61. Glasper states that he "fully responded to the discovery request and . . . fully complied with this order. . . ." Rec. doc. 63. Glasper and his counsel did not produce a privilege log. On March 10, 2008, Dangerfield was granted leave to withdraw as counsel from the case. Rec. doc. 73.

On March 6, 2008, the defendants filed this motion for imposition of further sanctions, including dismissal of the action. Rec. doc. 68. It was set for March 19, 2008. Glasper was ordered to submit an opposition by March 14, 2008 but did not do so. Rec. doc. 70. The defendants report that Glasper did not produce any documents in response to the February 21, 2008 order. The only response was the three affidavits stating that there are no documents. The statements in the affidavits are not credible and are contradicted by the record.

## The Closing File

Dangerfield's closing file for the 3635 Pine Street property is critical to the determination of the liability of the defendants. Glasper alleges that the defendants failed to procure flood insurance for his property at 3635 Pine Street. He seeks $650,000 for flood damage and business interruption arising out of Hurricane Katrina. Rec. doc. 74 at 4-7. The defendants respond that flood insurance was not provided because Glasper never provided the broker, Morgan, with a signed flood insurance application. The defendants contend that Morgan repeatedly requested the signed flood insurance application and reported that the policy could not be bound without the application. Id. at 8.

On August 21, 2007, Dangerfield was deposed. She testified that in 2004 or 2005 she represented Glasper when he purchased the nightclub on Pine Street near Washington Avenue. Rec. doc. 38 (Exhibit 3 at 13-14). The seller referred Glasper to Morgan, because the seller had obtained his insurance from Morgan. Id. at 18. The deposition transcript contains the following exchange:

> Q. So your role in that transaction was to do whatever work was necessary on Mr. Glasper's behalf to get the transaction ready for closing?
>
> A. Exactly.
>
> Q. And that involved what?
>
> A. Running an abstract, obtaining general information from the seller, which was

Mr. Bates, preparing a cash sale, making sure title was clear on the property, and obtaining the insurance.

Id. at 18. Dangerfield had communications with Morgan and received what she describes as binders for the insurance coverage. Id. at 37. She denied receiving any information from Morgan reporting that coverage was not bound. Id. at 37-38. Morgan's attorney provided Dangerfield with faxes dated March 11, 2005 and March 15, 2005; which indicated they were sent to Dangerfield, in which Morgan states that to bind coverage for flood insurance he needed signed applications. Id. at 39 and 41. Dangerfield agreed that the March 11, 2005 fax explained that coverage was not actually bound. Id. at 40. The following exchange occurred:

Q. All right. Now, if this [the March 11, 2005 fax addressed Dangerfield] was actually sent on March 11th, that's actually even after the closing on March the 8th, right?

A. Correct.

Q. All right. Did you receive this fax?

A. I don't recall. I may have. I'm not going to say no, because I don't recall.

Id. at 40. Dangerfield was asked if there was a document that would show that the signed applications were sent. She replied, "[t]here should be in my closing file." Id. at 40-41(Emphasis added). She was shown documentation for a fax on March 17, 2005 which was addressed to her and which sought signed applications for flood insurance. She testified that she did not receive it. Id. at 46.

On August 28, 2007, a week after Ms. Dangerfield's deposition, the defendants served Glasper with a supplement request for production of documents which sought the closing file. Rec. doc. 38 (Exhibit 6). On September 26, 2007, Glasper served a response which was signed by Tate. Glasper objected to producing the closing file on the ground of attorney-client privilege and work-product. He also contended that it was not relevant. Rec. doc. 38 (Exhibit 9).

After further communications, the defendants filed a motion to compel on November 8, 2007. Rec. doc. 38. Glasper failed to respond to the motion to compel; on December 3, 2007, the motion was granted; Glasper was ordered to produce the documents; he failed to comply with the December 3, 2007 order; the defendants filed a second motion for sanctions; Glasper did not file an opposition to the second motion; on January 16, 2008, he was ordered to demonstrate good cause why his case should not be dismissed; and on January 16, 2008, Tate called the undersigned's office and requested time to respond.[1]

On January 30, 2008, Glasper filed a pleading which was signed by Tate. It acknowledged that the defendants sought the closing file relative to 3635 Pine Street and stated, "[a]s of this date, the remaining documents were provided to defendants' counsel of record and should satisfy the entirety of their request." Rec. doc. 48 at 1. For the first time Glasper raised an issue about whether the closing file existed. The memorandum states:

> This matter pre-dated Hurricane Katrina and Attorney Dangerfield had to locate the files in storage – most of which was destroyed or damaged by flood waters to her building as a result of the storm. The only remaining documents in plaintiff's possession as a result of defendants' discovery request have now been provided to the defendant.

Rec. doc. 48 at 1-2. The statement that Dangerfield's closing file was damaged in Hurricane Katrina conflicts with Glasper's September 26, 2007 discovery response that he would not produce the closing file because it was protected from disclosure by the attorney-client privilege and it was not relevant. Rec. doc. 38 (Exhibit 9). The alleged destruction of the file in the Hurricane Katrina is also inconsistent with Dangerfield's testimony of August 21, 2007 which strongly indicated that the closing file existed. The closing file was not produced on January 30, 2008. The February 21, 2008 order

---

[1] These events are described in more detail in the order of February 21, 2008. Rec. doc. 57 at 3-4.

states that "[t]he January 30, 2008 production of the closing file is incomplete." Rec. doc. 57 at 7. Dangerfield's March 3, 2008 affidavit stating that she fully responded to defendant's discovery requests and fully complied with February 21, 2008 order is not credible. Rec. doc. 62.

### The Fire Loss Claim

What the closing file is to liability, the documentation on the fire loss claim is to damages. If Glasper has been compensated for the damage to his property as a result of the fire which occurred a few days after Hurricane Katrina, he cannot recover those damages a second time claiming the same losses due to flood. After Hurricane Katrina, Dangerfield represented Glasper on his claim for recovery of the damages due to the fire. Rec. doc. 38 (Exhibit 3 at 54). Dangerfield cannot claim that the documents for the fire loss claim were lost in Hurricane Katrina because all of the fire loss claim documents were generated after Hurricane Katrina.

Glasper contended that he produced the fire loss claim on January 30, 2008. The February 21, 2008 order states:

> Tate, on behalf of Glasper, produced an amended response regarding the fire loss claim. A cursory review of the first page of an adjuster summary prepared for Glasper indicates that there is a factual issue concerning damages claimed on the fire loss policy and claimed damages associated with the flood claim. For example, the first item is for the removal and replacement of wall to wall carpeting. Rec. doc. 54 (Exhibit C at p. 4). The defendants argue that there are documents which are missing from the fire loss claim file. They contend that they do not have any documents from the insurer itemizing what the settlement of $492,092.88 covered. They also urge that Glasper did not produce all documents from the fire loss claim because they were able to find some documents from third parties. See Rec. doc. 54 (Exhibits D-I). The first two documents are letters from Dangerfield to the adjusters regarding the fire loss claim. See Morgan & Anexus 00293-98. <u>Glasper's production of the fire loss claim is incomplete</u>.

Rec. doc. 57 at 8 (Emphasis added and footnote omitted).

Exhibit D (Morgan & Anexus 00293-97) is a letter dated May 31, 2006 on the stationary of A.

Patrice Dangerfield & Associates, LLC, addressed to two persons regarding Glasper's claim for fire damage. The letter refers to estimates to the floors in the main club, the men's bathroom, the women's bathroom, the bar and the kitchen. The letter refers to colored photographs which depict the fire damage to the building. This letter could not have been destroyed in Katrina. It is dated nine months after Katrina and bears Dangerfield's signature. It is relevant because it relates to the issue of whether Glasper's alleged flood damage was compensated by the fire policy. It was not produced by Glasper. Glasper and his counsel know that the defendants were able to obtain this document and others from third parties, yet they have made no attempt to explain why they cannot produce it and the rest of the fire claim file. Dangerfield's March 3, 2008 affidavit that she fully responded to defendant's discovery requests and fully complied with February 21, 2008 order is not credible. Rec. doc. 62.

## Conclusion

Glasper and his counsel have been granted many opportunities to produce the closing file and the fire loss claim file. They have repeatedly failed to do so. They have ignored the court's discovery orders. They have failed to respond to defendants' motions for sanctions. In the face of evidence which clearly and unmistakably demonstrates the existence of documents relating to the fire loss claim, they have submitted affidavits stating that there are no such documents. The court has granted Glasper and his counsel every opportunity to comply with the orders, but they have failed to do so. Lesser sanctions were imposed, yet Glasper and his counsel still refuse to produce documents which defendants have sought since August 2007.

The authority of a federal trial court to dismiss a plaintiff's action because of his failure to prosecute is clear. See Link v. Wabash R. Co., 370 U.S. 626, 629-30, 82 S. Ct. 1386, 1388, (1962). Fed. R. Civ. P. 41(b) of the Federal Rules of Civil Procedure provides that a court may in its discretion dismiss any action based on the failure of the plaintiff to prosecute or comply with any order of the

court. Larson v. Scott, 157 F.3d 1030, 1032 (5th Cir. 1998); Hulsey v. State of Tex., 929 F.2d 168, 171 (5th Cir. 1991); McCullough v. Lynaugh, 835 F.2d 1126, 1127 (5th Cir. 1988); Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 749 (5th Cir. 1987).

A dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumaciousness and a district court should employ lesser sanctions before dismissing the action. Long v. Simmons, 77 F.3d 878, 880 (5th Cir. 1996). In applying the sanction of dismissal, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, is responsible for the delay or failure to comply with the court's order. Markwell v. County of Bexar, 878 F.2d 899, 902 (5th Cir. 1989); Price v. McGlathery, 792 F.2d 472, 474-75 (5th Cir. 1986). In Ford v. Sharp, 758 F.2d 1018 (5th Cir. 1985), the Fifth Circuit described aggravating factors to be examined in considering an involuntary dismissal with prejudice including the extent to which the plaintiff, as distinguished from counsel, is personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct

Prior to February 21, 2008, it was not clear as to what extent the failure to produce the documents was attributable Glasper or his counsel. Glasper is a sophisticated business person. In 2005 he purchased a business and real estate for more than half a million dollars. He furnished an affidavit in which he reports that he has read and fully understands the order of February 21, 2008. Rec. doc. 63. The order fully describes the circumstances leading up to its issuance. Notwithstanding the caution in the order concerning dismissal for noncompliance, Glasper persists in not producing the entire closing file or the fire loss claim documents. The responsibility for failure to comply with the court's orders rests squarely with Glasper, as well as his counsel and former counsel.

**RECOMMENDATION**

IT IS RECOMMENDED that defendants' motion for imposition of further sanctions (Rec. doc. 68) be GRANTED and that all of Glasper's claims be dismissed with prejudice.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) working days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27th day of March, 2008.

**SALLY SHUSHAN**
**United States Magistrate Judge**